Welch, J.,
dissenting:
I concur with the district court, in holding that Dodge had no right of action against the bank. He was no party to the check. It was not delivered to him, 1ns agent, or any one assuming to act as his agent. To talk about his “ confirming ” the agency, is to talk about his confirming nothing, for there was no agency to confirm. The whole transaction began and ended without the remotest connection with Dodge, and his rights were not in the least degree affected by it. To say that he was, in any sense, a party to the transaction, because the thief falsely personated him, by assuming his name, is to confound a person with a na/me. The delivery of the check to the thief, no matter whether drawn payable to “ order ” or to bearer, gave Dodge no rights which he had not before; nor did the delivery of the receipted voucher by the thief to the paymaster take away any of Dodge’s rights. He could have prosecuted his claim against the paymaster, or the government, equally after the receipt of the voucher and delivery of the check, as before; and the paymaster, had he discovered the fraud before payment by the bank, could have controlled the check, by countermand, cancellation, or otherwise, in spite of Dodge. The money drawn upon in the bank was still the money of the paymaster, and the voucher was still the property of Dodge. If there was any right of action against the bank, that right was in the paymaster, and not in Dodge. The paymaster, however, has settled with the bank, and credited it with the check. Possibly it would bo *251 but fair to assume that this settlement was made under the belief that whatever right of action there might be against the bank would be in Dodge, and not in the paymaster, and that, therefore, it amounted to a transfer of the right from the paymaster to Dodge. On any theory of the case, however, Dodge could rise no higher in right than the paymaster; and I do not think the latter ever had any right of action, for the reason that he was more at fault than the bank officer. The paymaster’s money was paid upon his own check, to the person to whom that check was delivered, and to whom it was delivered with a knowledge that the person was no agent of Dodge. Why did he make the check payable to order, and not in the usual form payable to bearer % lie knew the pai'ty to be no agent. He knew that he was either Dodge himself, or a thief. If he was Dodge, it mattered not what was the form of the check. If he was a thief, Dodge would never have an opportunity to indorse his “ order ” upon the check. The only possible object, therefore, in making the check payable to order, was to jeopard the rights of the bank, without in the least protecting the rights of Dodge. Had the paymaster /mown the party to be a thief, of course he would have delivered him no check, even payable to order; and if he had done so, no one would deny but he should suffer the loss. Having a suspicion that the party was a thief, he should have settled the question of personal identity at once, and not have dodged the difficulty by casting the responsibility upon the bank officer. He should have refused the check, equally in the one form as in the other, until the party proved himself to be Dodge. With a suspicion that he might be an adroit thief, he puts into his hands an instrument by which, with a little carelessness or over confidence of the bank officer, he might defraud the bank, and that without any possible benefit to Dodge. He should, at least, have sent his clerk to the bank to notify them of his suspicion, or to inform them that this man was no agent of Dodge, but was either Dodge himself, or a thief, and that the fact of the delivery of the check to the party, as and by the name of Dodge, must not be taken by the *252 bank as evidence that the paymaster was satisfied that he was in fact Dodge himself.
It seems to me, therefore, that neither party had any just ground of action against the bank.